| | |
|---|---|
| SHANE THIBODEAUX AND HEATHER THIBODEAUX, BOTH INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILDREN, AUBRE THIBODEAUX, SHANE THIBODEAUX, JR., AND AMIEE THIBODEAUX | CIVIL ACTION |
| VERSUS | 18-651-SDD-RLB |
| DISA GLOBAL SOLUTIONS, INC., AND UNIVERSITY MRO, LLC | |

## RULING

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendant, University Services, LLC d/b/a University Services ("University").[2] Plaintiffs, Shane ("Thibodeaux") and Heather Thibodeaux, both individually and on behalf of their minor children, Aubre Thibodeaux, Shane Thibodeaux, Jr., and Amiee Thibodeaux (collectively "Plaintiffs") have filed an *Opposition*[3] to this motion, to which University filed a *Reply*.[4] For the reasons which follow, the Court finds that it lacks personal jurisdiction over University, and the Rule 12(b)(2) motion will be granted.

---

[1] Rec. Doc. No. 11.
[2] University is improperly identified as "University MRO, LLC." Rec. Doc. No. 11.
[3] Rec. Doc. No. 16.
[4] Rec. Doc. No. 19.
50228

## I. FACTUAL AND PROCEDURAL BACKGROUND

This matter involves claims for damages allegedly sustained by Plaintiffs resulting from Thibodeaux's failed drug test conducted at Gulf Coast Occupational Medicine ("Gulf Coast") on behalf of his employer, Specialty Welding and Turnaround on March 29, 2017.[5] Gulf Coast collected Thibodeaux's hair sample and sent it to Psychemedics Laboratory for analysis.[6] After conducting this analysis, Psychemedics reported to the Medical Review Officer ("MRO") employed by University that the hair sample tested positive for amphetamine and methamphetamine.[7] Plaintiffs allege that on April 4, 2017, Dr. Harvey Forman ("Dr. Forman"), a University contractor, conducted an interview with Thibodeaux pursuant to the policy & procedure manuals of DISA and University, but Dr. Forman did not accept Thibodeaux's explanation of legally prescribed medications as the reason for the positive finding and instead verified the positive results on April 5, 2017.[8] Dr. Forman allegedly sent a final report to Specialty Welding and Turnaround indicating the positive results;[9] thus, DISA listed Thibodeaux as "Inactive" on DISA's work eligibility database, which Thibodeaux claims has prevented him from working in his field as a safety manager in various plants.[10] Although Thibodeaux allegedly completed DISA's "Return to Duty" program, he claims he is still unable to work at "zero tolerance" job sites, where

---

[5] Rec. Doc. No. 1-2, ¶¶ 1-3.
[6] *Id.* at ¶ 4.
[7] *Id.*
[8] *Id.* at ¶ 5.
[9] *Id.* at ¶ 6.
[10] *Id.* at ¶ 7.
50228

employees who have ever been listed as "Inactive" are prohibited from working.[11] Thus, Thobideaux alleges he has been forced to take out-of-state jobs that prevent him from seeing his family for extended periods of time.[12]

Plaintiffs filed this lawsuit alleging that various failures on the part of University constitute actionable negligence. University contends its sole alleged involvement in this matter consisted of a phone call made by one of its contractors from outside the state of Louisiana.[13] University notes that Plaintiffs do not allege that Thibodeaux's positive test result was inaccurate or that University acted outside of its policy and procedure. University now moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure for several reasons.

University is incorporated in the State of Delaware and has its only place of business in the State of Pennsylvania.[14] Director of University Services Evelyn Ward ("Ward") declared under penalty of perjury that University has no offices, owns no property, and employs no individuals in the State of Louisiana.[15] Further, Ward states that University is not registered to conduct business in Louisiana, does not maintain a phone listing, telephone, or mailing address in Louisiana,[16] and does not advertise or solicit business in Louisiana.[17] Moreover, Plaintiffs failed to plead any facts to establish

---

[11] *Id.* at ¶¶ 8-9.
[12] *Id.* at ¶ 9.
[13] Rec. Doc. No. 11-2 (Declaration of Evelyn Ward, ¶¶ 9-10).
[14] Rec. Doc. No. 11-2 (Declaration of Evelyn Ward, ¶¶ 4).
[15] *Id.* at ¶ 5.
[16] *Id.* at ¶¶ 6-7.
[17] *Id.* at ¶ 8.
50228

that University has sufficient "continuous and systematic" contact with Louisiana such that University could be considered "at home" in Louisiana.

Dr. Forman is a contractor for University who performs his services for University from the state of Pennsylvania.[18] Ward stated that neither Dr. Forman nor University knew the location of Thibodeaux at the time he was contacted and interviewed by Dr. Forman.[19] Accordingly, University claims this Court lacks personal jurisdiction over it under the facts of this case.

Plaintiffs oppose this motion on the theory that University is an "alter-ego" of DISA, and because these Defendants operate as a "single business enterprise," the minimum contacts by DISA with the state of Louisiana are attributable to University such that the Court may exercise personal jurisdiction over University.

## II. LAW

### A. General Personal Jurisdiction

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the nonresident.[20] When a district court rules on a motion to dismiss without an evidentiary hearing, the plaintiff need only present a *prima facie* case of personal jurisdiction.[21] At

---

[18] *Id.* at ¶ 10.
[19] *Id.*
[20] *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332 (5th Cir.1982), *cert. den.*, 450 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983).
[21] *Trinity Indus., Inc. v. Myers & Assoc., Ltd.*, 41 F.3d 229, 230–31 (5th Cir.1995) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 [1985], and *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir.1986), *cert. den.*, 481 U.S. 1015 (1987).
50228

this stage, uncontroverted allegations in the complaint must be taken as true, and conflicts between the parties' affidavits must be resolved in the plaintiff's favor.[22]

To aid resolution of the jurisdictional issue, a court "may receive interrogatories, depositions or any combination of the recognized methods of discovery ... But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts."[23] "Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show that the assertion of jurisdiction would be unfair."[24]

"A federal district court has personal jurisdiction over a nonresident defendant to the same extent as a state court in the state in which the district court is located."[25] Thus, personal jurisdiction over a nonresident defendant attaches only when a defendant is amenable to service of process under the forum state's long-arm statute and the exercise of jurisdiction comports with the due process clause of the fourteenth amendment. In this case, these two queries merge into one because Louisiana's long-arm statute extends jurisdiction coextensively with the limits of the Due Process Clause of the U.S. Constitution.[26]

---

[22] *D.J. Inv., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir.1985).
[23] *Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (holding that a district court erred in requiring a plaintiff to establish more than a prima facie case even after a limited pretrial evidentiary hearing) (internal citations and quotations omitted).
[24] *Id.* at 245 (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir.1999)).
[25] *Walk Haydel*, 517 F.3d at 242.
[26] *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *St. Martin & Mahoney v. Patton*, 863 F.Supp. 311, 313–14 (E.D.La.1994).
50228

Where a defendant has "continuous and systematic general business contacts" with the forum state, the court may exercise "general jurisdiction" over any action brought against the defendant.[27] Where contacts are less pervasive, a court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum."[28]

### B. Specific Jurisdiction

The constitutional requirements for specific jurisdiction may be satisfied by showing that the defendant has sufficient "minimum contacts" with the forum state such that imposing a judgment would not "offend traditional notions of fair play and substantial justice."[29] The Fifth Circuit follows a three-step analysis for this determination. First, a court must determine "whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there."[30]

This "minimum contacts"/"purposeful availment" inquiry is fact intensive. No one element is decisive, and the number of contacts with the forum state is not, by itself, determinative.[31] A single, substantial act directed toward the forum can support specific jurisdiction,[32] but even multiple contacts, if "[r]andom, fortuitous, or attenuated ... are not

---

[27] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).
[28] *Id.* at 414; *Luv N' care, Ltd., v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).
[29] *Luv N' care*, 438 F.3d at 469 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).
[30] *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002); *see also Hanson v. Denckla*, 357 U.S. 235, 250–251 (1958).
[31] *Luv N' care*, 438 F.3d at 470.
[32] *See ASARCO, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 786 (5th Cir.1990).
50228

sufficient to establish jurisdiction."[33] What is significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the privileges or benefits of the laws of the forum state.[34]

Second, a court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts."[35] At this step, the proper focus in the analysis is on the "relationship among the defendant, the forum, and the litigation."[36] This is a claim-specific inquiry, as "the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts."[37]

Finally, "[i]f the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise of jurisdiction would be unfair or unreasonable."[38] In this inquiry, a court analyzes five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies."[39] "It is rare to say the assertion [of jurisdiction] is unfair after

---

[33] *Moncrief Oil*, 481 F.3d at 312 (citing *Burger King*, 471 U.S. at 479 (1985)).
[34] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citing *Hanson* 357 U.S. at 251, 254); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir.1983), *cert. den.*, 466 U.S. 962 (1984).
[35] *Nuovo Pignone*, 310 F.3d at 378.
[36] *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008).
[37] *Conwill v. Greenberg Traurig, L.L.P., et al.*, No. 09-4365, 2009 WL 5178310 at *3 (E.D.La. Dec. 22, 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006)).
[38] *Seiferth*, 472 F.3d at 271 (citing *Burger King*, 471 U.S. at 382).
[39] *Luv N' care*, 438 F.3d at 473; *see also, Burger King Corp.*, 471 U.S. at 476–77 (listing 7 factors).
50228

minimum contacts have been shown."[40]

### C. Minimum Contacts

Personal jurisdiction may not be avoided merely because a defendant did not physically enter the forum state. Although territorial presence frequently will enhance a potential defendant's affiliation with a state and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communication across state lines, thus obviating the need for physical presence within a state in which business is conducted. As long as a commercial actor's efforts are "purposefully directed" toward residents of the state in question, courts have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.[41]

Even so, "merely contracting with a resident of the forum state does not establish minimum contacts."[42] "A contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum."[43]

---

[40] *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 615 (5th Cir. 2008)(citing *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir.1999)).
[41] *Burger King*, 471 U.S. at 476–77.
[42] *Moncrief Oil*, 481 F.3d at 311.
[43] *Burger King*, 471 U.S. at 479 (internal citations omitted).
50228

Although a single act, such as a telephone call or mailing a letter, can be sufficient to establish minimum contacts, precedent is clear that communications alone are insufficient when "the communications with the forum did not actually give rise to [the] cause of action."[44] Rather, when communications relating to conducting business are the only contacts, courts generally require some type of "continuing obligations" between the defendant and residents of the forum, such as is found in an ongoing business relationship, to find that the defendant availed himself of the privilege of conducting business in the forum. Only then, "because his activities are shielded by 'the benefits and protections' of the forum's laws, it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."[45]

On the other hand, for claims of intentional tort, "[a] single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."[46] "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."[47]

## III. ANALYSIS

Plaintiffs herein apparently concede that University lacks sufficient minimum contacts with Louisiana to allow the Court's exercise of personal jurisdiction over

---

[44] *Wein Air*, 195 F.3d at 213; *Aviles v. Kunkle*, 978 F.2d 201, 205 (5th Cir.1992).
[45] *Burger King*, 471 U.S. at 476.
[46] *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) (citing *Brown v. Flowers Indus.*, 688 F.2d 328, 332–33 (5th Cir.1984)(holding that one long distance telephone call alleged to constitute defamation was enough to establish minimum contacts)).
[47] *Wein Air*, 195 F.3d at 213 (5th Cir.1999); *see also, Ross*, 246 Fed.Appx. 856, 859–60 (5th Cir. 2007)(deeming allegations that out of state counsel communicated false information to client in Texas alone sufficient to make prima facie case of specific personal jurisdiction).
50228

University. Rather, Plaintiffs claim that University is a "shell corporation, a mere instrumentality that is wholly owned by DISA."[48] Plaintiffs also claim that University is an "alter-ego" of DISA and that, because the two operate as a "single business enterprise," jurisdiction over DISA extends to University. With scant citation to evidence, Plaintiffs cite the following "facts" as demonstrative of a single business enterprise: (1) all University employees are actually DISA employees; (2) DISA and University share a common office; (3) the primary address listed for University on the Pennsylvania Secretary of State website is the same address listed for DISA on the Louisiana Secretary of State website;[49] (4) DISA maintains control over the policies and procedures of University, "dominating all authority and decision-making capabilities";[50] (5) DISA's Hair Testing Substance Abuse Policy designates the actions of the MRO, "asserting control and dominance over University";[51] (6) in this litigation, and all other matters where University and DISA are co-defendants, DISA and University are represented by the same law firms and lawyers, file joint pleadings, often fail to distinguish one from the other, and refer to themselves as "DISA and University."[52]

University correctly points out that Plaintiff did not plead facts sufficient to support an "alter-ego" or "single business enterprise" theory in their *Petition*, and the majority of claims made in their *Opposition* are conclusory statements lacking an evidentiary

---

[48] Rec. Doc. No. 16 at 4.
[49] Plaintiffs cite Rec. Doc. No. 16-1 & 16-2.
[50] Rec. Doc. No. 16 at 4.
[51] *Id.*
[52] *Id.*
50228

foundation. University claims that, whether relevant or not, the non-certified document from a Pennsylvania governmental website incorrectly documents Pennsylvania, rather than Delaware, as the state of University's organization.[53] DISA's Hair Testing Policy is likewise non-probative according to University because the policy does not reference University specifically at all, and it speaks only generally regarding the duties of an MRO in conducting and reporting a hair sample drug test. Nothing in this policy supports Plaintiffs' claim that it "clearly designates the actions of the MRO, asserting control and dominance over University."[54] University further argues that the deposition testimony of DISA's Vice President of Client Relations, Brendon C. Brown, offered by Plaintiffs in support of this argument actually undermines this single enterprise theory, considering that he testified that University Services is not advertised as "in-house" MRO services and is not called by DISA "in-house."[55]

This Court examined this issue in *Gines v. D.R. Horton, Inc.*[56] The Court stated:

> In *Hargrave*, the Fifth Circuit examined the bases for imputing to a parent corporation the contacts of a subsidiary. The mere fact that a parent corporation wholly owns a subsidiary and shares common management personnel with the subsidiary does not in itself defeat their presumably separate corporate identities for purposes of jurisdiction. 710 F.2d at 1160. Therefore, this circuit generally requires "proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes." *Id.* While the totality of the circumstances regarding corporate similarity must be examined, "[t]he degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship." *Id.*

---

[53] *See* Rec. Doc. No. 16-2.
[54] *See* Rec. Doc. No. 16 at 4.
[55] Rec. Doc. No. 16-4 at 2.
[56] 867 F.Supp.2d 824 (M.D. La. 2012).
50228

In determining whether to maintain corporate separateness of contacts, this Court must look to several non-exhaustive factors:

> (1) The amount of stock owned by the parent of the subsidiary;
> (2) Whether the entities have separate headquarters, directors, and officers;
> (3) Whether corporate formalities are observed;
> (4) Whether the entities maintain separate accounting systems; and
> (5) Whether the parent exercises complete control over the subsidiary's general policies or daily activities.

*Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 346 (5th Cir.2004) (citing *Hargrave*, 710 F.2d at 1160). "[T]he presumption of institutional independence of related corporate entities may be rebutted by **'clear evidence,' which requires a showing of 'something beyond' the mere existence of a corporate relationship**...." *Id.* (citing *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir.1999)).[57]

The Court finds that Plaintiffs have failed to carry their burden of demonstrating that University and DISA are a single business enterprise such that jurisdiction over DISA extends to University. Plaintiffs did not plead facts to support this theory in their *Petition*, and the majority of their claims about the control DISA allegedly exercises over University are conclusory and unsubstantiated. While it is undisputed that University is wholly owned by DISA, there is no evidence before the Court demonstrating whether the entities maintain separate accounting systems, share officers and directors, or the nature and level of any control DISA may exercise over University's daily activities. There is also nothing before the Court to suggest that University and DISA have not observed corporate

---

[57] *Id.* at 831 (emphasis added).
50228

formalities. DISA and University maintain separate domain addresses.[58] Indeed, the Fifth Circuit decision in *Jackson v. Tanfoglio Giuseppe, S.R.L.*, relied on by University, holds that, "[e]ven where some factors suggest that one entity is the alter ego of another, the maintenance of corporate formalities tips in favor of finding that the entities are not alter egos."[59]

Moreover, Plaintiffs have failed to substantively challenge University's argument that it lacks minimum contacts with Louisiana to warrant this Court's exercise of personal jurisdiction, and the Court has recently made this determination in a case involving similar facts brought against University in *LeBlanc v. DISA Global Sols., Inc.*[60]

---

[58] www.usservices.com; www.disa.com.
[59] 615 F.3d 579, 588 (5th Cir. 2010)(citing *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir.1990) (declining to find an alter ego even though one entity owned 100% of its subsidiaries, was responsible for corporate policy, funneled revenues into centralized accounts, and filed consolidated tax returns because those factors were "outweighed, albeit modestly" by observation of corporate formalities)).
[60] No. 17-76-SDD-EWD, 2018 WL 283750 (M.D. La. Jan. 3, 2018). The *LeBlanc* decision was supported by the holding of the District Court for the Eastern District of Louisiana in *Loicano v. DISA Global Solutions*, No. 14-1750, 2014 WL 531872 (E.D. La. Sep. 16, 2014).
50228

## IV. CONCLUSION

For the reasons set forth above, the *Motion to Dismiss*[61] filed by Defendant University Services LLC is GRANTED pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. University is hereby dismissed from this case without prejudice.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana the 26th day of February, 2019.

_____
**SHELLY D. DICK, CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[61] Rec. Doc. No. 11.
50228